FILED
2013 Sep-13  PM 04:36
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

JOHN HILSMAN INVESTMENTS,    )
LLC, DENNY FAMILY PROPERTIES,  )
LLC, MIKE MCCOLLUM, and       )
TRACY HONEA,                      )
                                 )
        Appellants,          )
                                 )
        v.                   )  CASE NO. 1:11-CV-1417-KOB
                                 )
QUALITY PROPERTIES, LLC.,      )
                                 )
        Appellee.          )

### <u>MEMORANDUM OPINION</u>

This matter comes before the court on appeal from an Order of the Bankruptcy Court for the Northern District of Alabama, *In re Quality Properties, LLC*, Case No. 10-42783-JJR-11.[1]  The Bankruptcy Court, in an Order entered January 31, 2011, held that Quality's leasehold interest continued despite its assignor's rejection of the lease in a prior bankruptcy, and granted Quality's motion to assume the Lease and Assignment.  *Id*. at Doc. 209. For the reasons stated below, the court finds that the Bankruptcy Court correctly decided the issue and affirms its decision.

---

[1]The appeal was recently reassigned from the docket of another judge to the undersigned judge.

STANDARD OF REVIEW

When a district court reviews a decision from a bankruptcy court, the Circuit Court has clearly defined that role:  "In reviewing a bankruptcy court judgment as an appellate court, the district court reviews the bankruptcy court's legal conclusions de novo.  The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, and give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses."  *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996).

FACTUAL BACKGROUND

The essential facts affecting this appeal are not disputed by the parties, but involve events from three bankruptcy proceedings.  This case concerns a ground lease ("Lease") originally entered into between Bruno's, Inc. and the owners of the property ("Landlords").[2]  In a prior bankruptcy case, *In re PWS Holding Corp., Bruno's Inc., et al.*, Case No. 98-00212 (Bankr. D. Del), Bruno's, Inc. assigned the Lease in 2005 to Bruno's Supermarkets, Inc. ("Supermarkets"), which immediately assigned the Lease to Quality Properties, LLC ("Quality"), the debtor in the current case.

The Landlords refused to recognize Quality as assignee of the Lease, and litigation ensued in the Circuit Court of Marshall County over numerous issues between Supermarkets, Landlords, and eventually Quality.  In November 2008, the trial court

---

[2]  Some of the current Landlords, Appellants here, are successors in interest to the original Landlords.

granted summary judgment for Supermarkets, holding that the assignment to Quality ("Assignment") was valid.  The Landlords appealed to the Alabama Supreme Court. While that appeal was pending, Supermarkets subsequently filed a Chapter 11 bankruptcy case on February 5, 2009.  *In re BFR Liquidation, LLC*, Case No. 09-00634-BGC-11 (Bankr. N.D. Ala.) ("Supermarkets bankruptcy").

In that case, as relevant to the issue at hand, Judge Cohen found Supermarkets had a continuing contractual obligation to the Landlords to pay rent under the Lease if Quality failed to do so.   He found this obligation made the Lease an executory contract, which had to be administered in the Supermarkets bankruptcy.  Cohen Op. at 6 (Supermarkets bankruptcy, doc. 2301).  Because Supermarkets had neither accepted nor rejected the lease pursuant to §§ 1123(b)(2) and 365(a) of the Bankruptcy Code, he found Supermarkets rejected the Lease by operation of law.  *Id*. at 6-7.  He entered this Order on March 26, 2010.[3]  *Id*. at 9.  That Order is not before this court for review, nor was it appealed.  Judge Cohen specifically refrained from addressing the impact of his Order on the interests of Quality in the Lease under the Assignment.  *Id*.

On October 1, 2010, Quality filed the chapter 11 bankruptcy case from which this appeal arises.  Quality filed a motion to assume the Lease and related

---

[3]Although "not before this court for review," this opinion frequently refers to and analyzes Judge Cohen's opinion because the Landlords argue, among other things, that Judge Robinson's decision in effect reversed Judge Cohen's decision. As fully explained below, it did not.

Assignment to it.   The Landlords objected to Quality's motion.  They also filed a motion

for relief from the automatic stay to allow Judge Cohen to consider their motion to

compel surrender of the property that they had filed in the Supermarkets bankruptcy.

Judge Robinson framed the Landlords' argument as follows:  "The crux of

the Landlords' argument is rejection of the Lease by Supermarkets in the Supermarkets

bankruptcy caused Quality to lose the leasehold estate it obtained through the

Assignments, thereby leaving Quality with no remaining rights or interest to assume

under Code § 365."  Robinson Op. at 7 (doc. 209).

Judge Robinson concluded that after Supermarkets assigned the Lease to

Quality, Supermarkets "was no longer the lessee under the Lease, although it remained

obligated to the Landlords to back-stop defaults by Quality."  Robinson Op. at 10 n. 19.

Judge Robinson's rationale for finding Supermarkets was no longer the lessee is based

upon his analysis of the nature of the leasehold estate created by the Lease and the

Assignment.  Judge Robinson noted the assignors of the Lease (Bruno's Inc. and then

Supermarkets) "retained no remainder, reversion, contingency or other right whatsoever

that could once again vest in them any inkling of the leasehold estate they conveyed under

the Assignments."  Robinson Op. at 8.  He found the Assignment resulted in the transfer

to Quality of the entire leasehold estate.  He contrasted such an assignment of the

leasehold estate with a sublease:  "A sublease creates a new tenancy which relies on the

underlying prime lease for its subsistence, while an assignment of a lessee's interest under

a lease transfers the original tenancy without creating a new leasehold estate."  *Id*. at 8-9.

4

Although Judge Robinson found Supermarkets was no longer the lessee under the Lease, he noted the Assignment to Quality did not relieve Supermarkets of its contingent obligations under the Lease. He concluded it was "these obligations that were rejected by Supermarkets in the Supermarkets bankruptcy." *Id*. at 9-10. Therefore, he found Supermarkets had no rights in the leasehold tenancy at the time it was deemed to have rejected the Lease: "Utilizing Code § 365(a), Supermarkets was able to purge itself of the lessee's *liabilities* under the Lease, but it no longer had any *rights* in the leasehold tenancy to reject—those rights were vested in Quality and beyond the reach of Code § 365(a) in the [Supermarkets bankruptcy]." *Id*. (emphasis added).

In a footnote, Judge Robinson made clear he found the Lease had not been terminated by virtue of its rejection by Supermarkets: "As stated– perhaps ad nauseam– the Lease was not terminated, and it is alive and well with Quality as the lessee and, much to their chagrin, the Landlords as lessor." *Id*. at 10 n. 19. Accordingly, Judge Robinson granted Quality's motion to assume the Lease and Assignment.[4] He also denied the Landlords' motion for relief from the stay.

The Landlords appealed to this court. The court agrees with Judge Robinson's well-reasoned opinion and, for the reasons stated below, will affirm it.

---

[4] Quality had also subleased portions of the property to others. The continued validity of these subleases depends on the continuation of Quality's rights under the Lease and Assignment.

<u>DISCUSSION</u>

I.  § 365(a) or § 365(d)(4)?

The Landlords' primary argument on appeal is that Supermarkets' rejection of the Lease in its bankruptcy case terminated the Lease and the Assignment by operation of law, giving Quality no rights to the Lease to be assumed in its bankruptcy.  Their argument, however, misconstrues key language of the Bankruptcy Code in the context of assignment of leases and the continuing obligations under an executory contract.  Their underlying legal theory suggests that *§ 365(d)(4)* should apply to Quality's interest in the Lease.  The success of their argument hinges on the applicability of § 365(d)(4) to the facts of this case because all of the cases on which they rely applied § 365(d)(4) and not § 365(a) on which Judge Robinson and Judge Cohen relied.  Their reliance on § 365(d)(4) does not sustain their arguments.

A. Bankruptcy Code Sections and Judge Cohen's & Judge Robinson's Opinions

Under 11 U.S.C. § 365(a), a "trustee, subject to the court's approval, may assume or reject any *contract* or *unexpired lease* of the debtor."  (Emphasis added).[5]  As Judge Cohen reasoned in the Supermarkets bankruptcy, a lease is "unexpired" under § 365(a) when the debtor/assignor remains liable to the landlord for the actions of its assignee, requiring that the lease be administered in the bankruptcy estate of the assignor.

---

[5]  Section 365(a) provides that "[e]xcept as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

6

Cohen Op. at 4, citing *Noletto v. Nationsbanc (In re Noletto)*, 280 B.R. 868, 872 (Bankr. S.D. Ala. 2001).

Judge Cohen did not address whether the rejection by Supermarkets of its unexpired obligations under the lease affected Quality's rights under that Lease. Cohen Op. at 9. Whether Supermarkets' rejection by operation of law of its executory contract with the Landlords operated to terminate Quality's assigned rights under the Lease requires examination of other provisions of the Bankruptcy Code.

The general section—§ 365(a)— is qualified for leases of nonresidential real property by § 365(d)(4), which was enacted in 1984  as one of the so-called "Shopping Center Amendments" to the Bankruptcy Code.  *In re Southwest Aircraft Services Inc.*, 831 F.2d 848, 851 (9th Cir. 1987).  Section 365(d)(4) provides in pertinent part:

> [A]n unexpired lease of nonresidential real property under which the *debtor is the lessee* shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of--
> > (i) the date that is 120 days after the date of the order for relief; or
> > (ii) the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4) (emphasis added).

The Landlords argue Supermarkets' rejection of the Lease was governed by § 365(d)(4), which they assert terminated the Lease, including Quality's interests under the Assignment.

Judge Robinson analyzed the rejection of the Lease in the Supermarkets bankruptcy under § 365(a) rather than § 365(d)(4).  He stated the issue presented as being "whether rejection *pursuant to 11 U.S.C. § 365(a)* by a chapter 11 debtor in another case, of its residual obligations under a lease that had been assigned to the debtor in this case, resulted in termination of the assigned leasehold estate thereby leaving nothing for the debtor in this case to assume."  Robinson Op. at 1 (emphasis added).

The Landlords concede that "courts have generally ruled that rejection of an executory contract or unexpired lease under 11 U.S.C. § 365 does not constitute termination."  However, they argue numerous courts have held rejection under § 365(d)(4) "constitutes termination in order to give effect to the requirement of 'immediate surrender.'"  Therefore, this court must determine whether Judge Robinson correctly concluded § 365(a), and not § 365(d)(4), governed Supermarkets' rejection of the Lease in the Supermarkets bankruptcy.

Quality argues § 365(d)(4) did not apply because, in the Supermarkets bankruptcy, Supermarkets "was not the lessee of the Landlords."  Quality argues Supermarkets had no remaining *possessory* interest in the property after it assigned the Lease to Quality, and thus, was not a "lessee" under § 365(d)(4).  The Landlords argue Supermarkets was the "lessee" because of its continuing obligations under the Lease for payment of rent to them should Quality fail to perform its obligations under the Lease.

 In his decision, Judge Cohen never referred to Supermarkets as the "lessee."  Judge Cohen cited § 365(a) in the confirmation Order in finding the Lease had

been rejected as a matter of law.  Cohen Op. at 6.  Nowhere in his decision does Judge

Cohen refer to § 365(d)(4) and nothing in his opinion suggests the deemed rejection of

the Lease was pursuant to § 365(d)(4).  The only interest of Supermarkets in the Lease

discussed by Judge Cohen was its continuing contingent liability for its assignee's

actions.  *Id*. at 4.

      In the Quality bankruptcy, Judge Robinson had to address what Judge

Cohen had left open: the effect of Supermarkets' rejection of the Lease on Quality's

rights under the Assignment of the leasehold interest.  He addressed that question under §

365(a).  Robinson Op. at 1, 7, & 10.  Judge Robinson concluded that after Supermarkets

assigned the Lease to Quality, it "was no longer the *lessee* under the Lease, although it

remained obligated to the Landlords to back-stop defaults by Quality."  Robinson Op. at

10 n. 19 (emphasis added).

  B.  What does "lessee" mean?

      After conducting a study of the meaning of "lessee" as used in § 365(d)(4),

the court agrees with Quality that § 365(d)(4) does not apply to Supermarkets'

relationship to the Lease.  By its terms § 365(d)(4) applies only to an "unexpired lease of

nonresidential real property *under which the debtor is the lessee*."  (Emphasis added).  If

Supermarkets were not "the lessee" under the Lease at the time it rejected the Lease,

§ 365(d)(4) would not apply. Therefore, the first question the court must address is the

meaning of "the lessee" in § 365(d)(4).

The starting point for interpreting § 365(d)(4) is the language of the statute itself. *Randall v. Loftsgaarden*, 478 U.S. 647, 656 (1986). In construing the Bankruptcy Code, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (alteration in original) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1551 (11th Cir. 1996) ("In *United States v. Ron Pair Enterprises, Inc.*, the Supreme Court set forth the plain meaning doctrine for construing the complex Bankruptcy Code . . . ."). The Bankruptcy Code contains no general definition for the term "lessee." *In re 440 Kings Way, LLC*, 430 B.R. 915, 918-19 (Bankr. S.D. Ga. 2007). Therefore, this court must first determine the plain meaning of "lessee" as it is used in § 365(d)(4). *See Jove Eng'g*, 92 F.3d at 1550.

To determine the plain meaning of terms in the Bankruptcy Code, courts have looked to both lay and legal dictionaries for guidance. *Jove Eng'g*, 92 F.3d at 1551 (using *Webster's New Collegiate Dictionary* and *Black's Law Dictionary* to construe the plain meaning of "individual"); *Fin. Sec. Assurance, Inc. v. Tollman-Hundley Dalton*, 74 F.3d 1120, 1124 (11th Cir. 1996) (using *Black's Law Dictionary* to construe the plain meaning of "rent"). The primary definition of "lessee" in a commonly used dictionary at the time § 365(d)(4) was enacted is "one taking *possession* of real estate under a lease, esp. a written lease – a *tenant* of a leasehold estate." *Webster's Third New International Dictionary* (1971) (emphasis added). Webster's further defines "*tenant*" in pertinent part

10

as: "**1 a :** one who holds or *possesses* real estate . . . **b :** one who has the occupation or temporary *possession* of lands . . . **2 :** one that has *possession* of a place . . . ." *Id.* (emphasis added).

A widely used legal dictionary from that time also shows that a possessory interest in real estate is central to the common legal meaning of "lessee":

> One who rents property from another.  In the case of real estate, the lessee is also known as the *tenant*.  He to whom a lease is made.  He who holds an estate by virtue of a lease.  One who has been given *possession* of land which is exclusive even of the landlord, except as the lease permits his entry, and except the right to enter to demand rent or to make repairs.

*Black's Law Dictionary* 812 (5th ed. 1979) (emphasis added).

As to real estate, *Black's* equates "lessee" with "tenant."  *Black's* defines "tenant" in pertinent part:

> [O]ne who *holds lands* of another; one who has the temporary *use and occupation* of real property owned by another person (called the "landlord"), the duration and terms of his tenancy being usually fixed by an instrument called a "lease".

*Id.* at 1314 (emphasis added).[6]

The central idea of these definitions requires a lessee to have possession or hold an estate in the property.  Thus, when real estate is involved, *Black's* definition of "lessee" means one in possession of, occupying or holding an estate in, real property.

---

[6]  The current edition of *Black's* defines lessee as "[o]ne who has a *possessory* interest in real or personal property under a lease; TENANT."  (9th ed. 2009) (emphasis added).  "Tenant" is defined as "[o]ne who holds or *possesses* lands or tenements by any kind of right or title."  *Id.* (emphasis added).

Therefore, both the common lay and legal definitions of "lessee" at the time § 365(d)(4) was enacted support construing "lessee" to mean one with a *possessory* interest in the nonresidential rental property at issue.

Other language in § 365(d)(4) provides contextual support for this interpretation.  Section 365(d)(4) provides that "the trustee shall immediately surrender that nonresidential real property to the lessor" in the event the lease is not accepted or rejected within the prescribed time limit.  Requiring the trustee to surrender the property again shows that *possession* of the property plays a crucial role in § 365(d)(4). Construing "lessee" to mean one with a possessory interest in the property meshes with the provision requiring the trustee to "immediately surrender" the property.  A debtor not in possession of the leasehold cannot surrender it.  The context of the statute, thus, supports construing "the lessee" to include only debtors who *possess* the real property in question.

This interpretation of "lessee" also comports with "Congress' intent, to protect lessors from the risk caused by precarious financial condition of lessee debtors and provide a short time frame for a Debtor–in–Possession to elect either to assume an unexpired non-residential lease or vacate the premises forthwith." *In re The Deli Den, LLC*, 425 B.R. 725, 726 (Bankr. S.D. Fla. 2010) (citations and internal quotations omitted). If someone other than the debtor is the lessee in possession of the property, presumably paying rent to the lessor, then the lessor does not need § 365(d)(4) to protect it from the precarious financial condition of the debtor.

Accepted common and legal definitions of lessee at the time § 365(d)(4) was enacted support construing "the lessee" to mean one with a possessory interest in the property at issue. The context of § 365(d)(4) as a whole also supports that interpretation. Therefore, the court concludes that "the lessee" in § 365(d)(4) is limited to debtors with a possessory interest in the property at issue and conversely excludes debtors without a possessory interest.

C. Was Supermarkets a "Lessee"?

The court must determine whether Supermarkets had a continuing possessory interest in the real property after its assignment of the Lease to Quality by reference to the language of the Assignment and Alabama property law. *See Nobleman v. American Sav. Bank*, 508 U.S. 324, 329 (1993)("In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.'" (quoting *Butner v. United States*, 440 U.S. 48, 54–55 (1979) (alteration in original))); *In re Sinnreich*, 391 F.3d 1295 (11th Cir. 2004) ("The nature of a bankrupt's interest in property is determined by state law." (citing *Butner*, 440 U.S. at 55 (1979))). Only if Supermarkets had a possessory interest in the Landlords' property would § 365(d)(4) apply to terminate the lease.

Under Alabama law, lessees have the right to possess and enjoy the property during the term of the lease. *Johnson v. Northpoint Apartments*, 744 So. 2d 899, 902 (Ala. 1999); *see also Nave v. Berry*, 22 Ala. 382, 1853 WL 380  at *6 (1853)

("[L]essees have, by implication, the right to possess and enjoy the property during the term specified."). Lessees also have the right to assign or transfer their interests to a third party. *Homa-Goff Interiors, Inc. v. Cowden*, 350 So. 2d 1035 (Ala. 1977); *see also Nave*, 1853 WL 380 at *6 (Lessees also have the "right to assign or transfer their interests to a third party, to put him in possession of the property, and to clothe him with all the rights and privileges which they possess under the contract.").

　　　　　If a lessee transfers his entire interest in the lease term, the transfer constitutes an assignment. *Pantry, Inc. v. Mosley*, --- So.3d ---, 2013 WL 1858777, at *7 n.2 (Ala. May 3, 2013) (citation omitted); *Johnson v. Thompson*, 64 So. 554, 555 (Ala. 1914). Such an assignment by a lessee divests the assignor— the original lessee— of any reversionary interest in the property. *Johnson v. Moxley*, 113 So. 656, 657 (Ala. 1927) ("The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right . . . .").

　　　　　The assignment creates a privity of estate between the assignee and the owner, and the assignee becomes the tenant under the lease. *See Pan Am. Petroleum Corp. v. Parker*, 160 So. 220, 223 (Ala. 1935) (privity of estate created between assignee and original lessor when whole estate is transferred and no reversionary right is retained by lessee); *Thompson*, 64 So. at 555 (assignment of a lease creates the relationship of landlord and tenant between the assignee and the lessor).

　　　　　In the present case, Supermarkets assigned and transferred all of its rights and possessory interest in the Lease to Quality. The Assignment divested Supermarkets

14

of any reversionary right to possess the property.  After Supermarkets assigned the Lease,

its only relation to the Lease was its continuing contingent contractual obligation to

Landlords to cover any default by Quality.  Cohen Op. at 4.  Notably, the Lease did not

require the consent of the Landlords for this Assignment.  Appellants' Designated Item 1.

 Supermarkets was no longer the tenant or "lessee," and had no right to possess the

property.

        Although Judge Robinson did not specifically find Supermarkets had no

possessory interest in the property that was the subject of the Lease, he did conclude that,

after the Assignment, Supermarkets "retained no remainder, reversion, contingency or

other right whatsoever that could once again vest in them any inkling of the leasehold

estate."  Robinson Op. at 8.  This statement equates to finding Supermarkets had no

remaining possessory interest—immediate or future—in the leased property and accords

with Alabama law.  Judge Robinson's statement that Supermarkets was no longer the

"lessee under the Lease" correctly reflects the operation of Alabama law on the

assignment of the leasehold by Supermarkets to Quality.  *See* Robinson Op. at 10 n.19.

        So, Supermarkets was not "the lessee" under an unexpired lease of

nonresidential real property and § 365(d)(4) did not apply to its deemed rejection of the

Lease in the Supermarkets bankruptcy.  Accordingly, Judge Robinson correctly concluded

the rejection of the Lease was governed by § 365(a).

D.  "Party to the Lease" Does Not Mean "Lessee"

The Landlords contend that Judge Robinson issued "a *de facto* **reversal** of the finding of fact and conclusions of law" entered in the Supermarkets' bankruptcy case. Appellants' Reply Br. (doc. 9) at 6 (emphasis in original).  Such argument can only stand upon nit picking at the word choices of each judge.  A fair, objective reading of both opinions finds instead that both judges found the same thing concerning Supermarkets' unexpired, contractual obligations to the Landlords under the Lease.

Supermarkets' having "an interest in a lease" or "being a party to the lease," as Judge Cohen found, does not conflict with Judge Robinson's determination that Supermarkets was "not the lessee." Although neither bankruptcy judge analyzed whether Supermarkets was a "lessee" so as to trigger § 365(d)(4)— probably because as experienced bankruptcy jduges they knew that section did not apply— this court's examination of the meaning of "lessee" as used in that section supports a finding that Judge Robinson's opinion was not a "*de facto* reversal" of Judge Cohen's opinion.

This court's finding that § 365(d)(4) does not apply because Supermarkets was not the "lessee" does not conflict with Judge Cohen's holding that Supermarkets remained a party to the Lease.  The lease qualified under § 365(a) as an "unexpired lease of the debtor" Supermarkets, but that finding did not mandate that Supermarkets be "the lessee" as required by § 365(d)(4).

A case cited by the Landlords further confirms that analysis under § 365(a) applies when the debtor has assigned its possessory interest under the lease but remains

liable in contract to the lessor.  In *Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc.*, 25 B.R. 484, 497 (S.D. Ohio 1982), the bankruptcy court explained that, under § 365(a), the debtor did not need to have a possessory interest in the lease it had assigned but wished to assume as an expired lease; the court held that the lease need only be the "lease of the debtor."  25 B.R. at 497.

While § 365(a) only requires that the contract or an unexpired lease be "of the debtor," § 365(d)(4) specifically applies only to "an unexpired lease of nonresidential real property under which the *debtor is the lessee . . . .*" The use of more precise language by Congress signals a more limited application.

A better  understanding of the hybrid nature of the rights created by a lease sheds light on the similarity of approach by both judges.

As explained in *Allied Technology, Inc.*:

> A lease of real property is a hybrid legal arrangement creating both privity of estate and privity of contract between the lessor and lessee.  The "leasehold" is the interest in real property involved, typically the res minus the lessor's reversionary interest.
>
> An assignment of the leasehold, without reservation of a right of reentry, may divest the lessee-assignor of the estate.  The lessee-assignor, however, remains in privity of contract, and continues to be liable, as a surety, for covenants designed for protection of the lessor's reversion.  The lessee-assignor, nevertheless, ceases to have any direct interest in the leasehold. . . .

25 B.R. at 494-95.

So, when Supermarkets assigned its interest in the leased property to Quality, it remained in privity of contract with the Landlords, although it ceased to have any direct interest in the leasehold.  The possessory interest in the leasehold shifted to Quality who became the "lessee" in privity of estate with the Landlords. The assignment in essence brought Quality into a triangle relationship of this "hybrid legal arrangement": Quality became the tenants of the Landlords, to whom they owe rent and other obligations they assumed under the Lease; Supermarkets continues to be a party to the Lease because of their continuing contractual obligations to the Landlords.

Both Judge Cohen and Judge Robinson recognized and discussed the continuing contractual obligations Supermarkets owed to the Landlords even after it validly assigned the Lease to Quality.  *See* Cohen Op. at 3-4; Robinson Op. at 8.  Both opinions recognized that the Assignment to Quality could not and did not absolve Supermarkets of its obligations to the Landlords. *See* Cohen Op. at 5;  Robinson Op. at 9. Recognizing that Supermarkets had continuing obligations or liabilities to the Landlords pursuant to the "unexpired lease of the debtor" under § 365(a) does not automatically require, as the Landlords argue, that Judge Robinson in essence "reversed" Judge Cohen's decision when he allowed Quality to assume the assigned lease in its bankruptcy.

Each Judge focused on the relationship that the bankrupt party before him had to the Lease.  Judge Cohen focused on the privity of contract between Supermarkets and the Landlords that continued after the Assignment, even though the Assignment divested Supermarkets of any interest in the leasehold.  Judge Robinson focused on what,

18

if any, right of Quality under the Assignment of the leasehold survived the termination of

Supermarkets' interest in the Lease.  Because he found that Supermarkets could not reject

what it did not have—possessory rights in the leasehold—he found that the termination of

Supermarkets' contractual obligations to the Landlords did not terminate Quality's rights

of possession under the Assignment.  Robinson Op. at 7-9.

Judge Robinson did not "reverse" Judge Cohen's opinion when he

determined that Quality could assume the portion of the Lease that Supermarkets had not

rejected—the assigned leasehold estate.  The court concludes that § 365(a)— not §

365(d)(4)— applies to the Lease and Assignment at issue here.  Merely because Judge

Cohen found Supermarkets' contractual obligations under the Lease rejected by operation

of law under § 365(a) does not mean that Quality's leasehold estate was rejected pursuant

to § 365(d)(4) mandating the immediate surrender of the property to the Landlords.

## II.  Supermarkets' Rejection of the Lease Did Not Terminate Quality's Leasehold

Even if the Landlords were correct and § 365(d)(4) applies to the Lease in

question, contrary to their argument, its deemed rejection did not "terminate" the Lease

and specifically did not "terminate" Quality's rights under the Assignment entered prior

to Supermarkets' bankruptcy. Instead, the rejection operated as a breach of contract, and

took the Lease outside of the bankruptcy estate.  *See* 11 U.S.C. § 365(g) (". . . the

rejection of an executory contract or unexpired lease of the debtor constitutes a breach of

such contract or lease . . . ."); *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306

(11th Cir. 2007); *In re Printronics, Inc.*, 189 B.R. 995, 1108 (Bankr. S.D. Fla. 1995).

19

The Landlords also argue what neither bankruptcy judge directly addressed: that Judge Cohen's Order rejected and terminated the Lease "which had the mandatory effect under 11 U.S.C. § 365(d)(4) of terminating the Assignment, thus entitling Landlords to 'immediate possession.'" Appellants' Br. (doc. 6) at 22.  However, in his Order addressing Supermarkets' Lease, as previously noted, Judge Cohen specifically stated that he had declined to address any of the state law issues involving the validity of the Assignment.  He emphatically stated: "[T]his Court has not, should not, and will not decide those issues.  Included in that conclusion is any decision on the impact of this order on the interest of Quality Properties."  Cohen Op. at 9. Had he intended the rejection of the Lease by Supermarkets to effect a termination of the Assignment and Quality's resulting rights, Judge Cohen would not have made such a disclaimer.

Even with his strong disclaimer, the Landlords still assert that Judge Cohen's Order, in effect, terminated Quality's leasehold interest.  This argument ignores precedent and rests upon the premise that rejection equals termination when it does not. *See In re Printronics, Inc.*, 189 B.R. at 1108.

A.  Rejection Does Not Equal Termination

The Eleventh Circuit refused to equate rejection of an executory contract with termination of it in a case involving § 365(a).  In *Lil' Joe Records*, the Court considered the rejection of an executory contract that had transferred ownership of certain copyrights to the debtor.  Thompkins, a rap artist, sold certain copyrights in his works to Luke Records, a music recording company, that subsequently filed for bankruptcy.  As

20

part of its plan of reorganization, Luke Records rejected the contracts with Thompkins

under § 365(a) of the Bankruptcy Code, and those copyrights were assigned to Lil' Joe

Records, Inc. 476 F.3d at 1301-02.  Years later, Thompkins sued Lil' Joe Records, Inc.

for copyright infringement, alleging it did not gain ownership of the copyrights through

the bankruptcy.  *Id.* at 1302.

   Thompkins argued the copyrights he transferred to Luke Records  reverted

to his ownership when Luke Records rejected the executory contract.  *Id*. at 1304.   The

Eleventh Circuit rejected that argument:

> In essence, Thompkins asks this court to deem an executory contract
> rejection under § 365 to be the functional equivalent of a rescission,
> rendering void the contract and requiring that the parties be put back in the
> positions they occupied before the contract was formed.  This is not the
> purpose of § 365, nor does Thompkins cite any authority to show otherwise.

*Id*. at 1306.

   The Court concluded that Thompkins misunderstood the impact of rejection

under § 365, and it refused to equate rejection under § 365 with termination of the

contract:

> [R]ejection "does not embody the contract-vaporizing properties so
> commonly ascribed to it . . . .  Rejection merely frees the estate from the
> obligation to perform; it does not make the contract disappear."  *In re
> Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 703.  More specifically,
> "[r]ejection has absolutely no effect upon the contract's continued existence;
> the contract is not cancelled, repudiated, rescinded, or in any other fashion
> terminated." *Id.* at 703 (quotations omitted); *see also Eastover Bank for
> Savings v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1082
> (5th Cir.1994) (holding that rejection under § 365(g) "does not mean that
> the executory contract . . . has been terminated, but only that a breach has
> been deemed to occur"); *O'Neill v. Cont'l Airlines, Inc. (In re Cont'l*

> *Airlines)*, 981 F.2d 1450, 1459 (5th Cir.1993) ("To assert that a contract
> effectively does not exist as of the date of rejection is inconsistent with
> deeming the same contract breached.")

*Id*.

Although *Lil' Joe Records* did not involve rejection of a lease, it cited

favorably *Austin,* in which the Fifth Circuit held that rejection of a lease does not cause

termination of the lease under either § 365(a) or § 365(d)(4).  *Lil' Joe Records*, 476 F.3d

at 1306 (citing *Eastover Bank for Savings v. Sowashee Venture (In re Austin Dev. Co.)*,

19 F.3d 1077, 1082-83 (5th Cir.1994)).  In any event, *Lil' Joe Records*, which is binding

precedent in this Circuit, held emphatically that rejection of a contract under § 365(a)

does *not* terminate the contract.

Similarly, in a case involving rejection of executory contracts and leases

under a prior version of § 365, this Circuit refused to equate rejection of an executory

lease with termination.  In *Katz v. Weil (In re Garfinkle)*, the Court considered whether

the leasehold estate survived rejection of the lease by the trustee of the debtor.  577 F.2d

901, 903 (5th Cir. 1978).[7]  The Court observed that in cases involving disputes over rent,

or a lessee's right to remove assets from the property, "[a]uthorities agreed . . . the

rejection [of a lease] by the trustee of a bankrupt lessee, does not in and of itself terminate

the lease."  *Id*. at 904 (citing 4A *Collier on Bankruptcy* ¶ 70.44 (14th ed. 1975)).

---

[7]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth
Circuit rendered prior to October 1, 1981.

The Court found this rule applied to the trustee's rejection of the lease on behalf of the debtor as lessee: "We agree that the Trustee's rejection of the lease for [Debtor], lessee, did not destroy the leasehold estate.  That action merely placed the leasehold outside of the bankruptcy administration without destroying the underlying estate. . . ."  *Id*. So, *Garfinkle* stands for the proposition that rejection of a lease by the debtor under the predecessor to § 365[8] does not terminate the lease or destroy the leasehold estate.

The Fifth Circuit decision in *Austin* built upon the earlier holding of *Garfinkle* when it addressed head on the flawed, inconsistent, and circular reasoning used by other courts. These other courts have inaccurately held that a lease is "deemed rejected" when "the further requirement of § 365(d)(4) that the trustee shall immediately surrender such . . . property . . . effects a termination of the lease."  *In re Austin Dev. Co.*, 19 F.3d at 1080-81 (internal quotations omitted).[9]  Instead the Court presented an analysis

---

[8]     *Garfinkle* was decided under § 70(b) of the Bankruptcy Act, which in pertinent part reads as follows: "Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property . . . . Any such contract or lease not assumed or rejected within such time . . . shall be deemed rejected."

*Garfinkle*, 577 F.2d at 903 (quoting § 70(b) of the Bankruptcy Act, then codified at 11 U.S.C. § 110(b)).

[9]  The Fifth Circuit explained the flawed analysis of that line of cases:
           Those cases deduce that when a lease is "deemed
           rejected," the further requirement of § 365(d)(4) that the
           trustee "shall immediately surrender such nonresidential
           real property to the lessor" effects a termination of the
           lease. Under these cases, the lease is terminated by

that construed "the plain meaning of § 365, understood in light of all its terms, which together expresses the Congressional purpose behind the trustee's assumption and rejection power." *Id*. at 1081 (footnote omitted).

The Court in *Austin* noted that, in *Garfinkle,* it "held that the deemed rejection of a lease under § 70(b) did not terminate the lease but merely placed the trustee's obligation to perform under the leasehold outside of the bankruptcy administration without destroying the leasehold estate." *Id*. at 1081 (citing *In re Garfinkle*, 577 F.2d 901, 904 (5th Cir. 1978)). Because the facts in *Garfinkle* were similar to those before it, the Court found that Garfinkle's "analysis remains persuasive." *Id*.

---

operation of federal law and not because of any breach of its terms. They conclude that when the lease terminates, security interests in the lease are extinguished. *See In re Giles Associates, Ltd.,* 92 B.R. 695 (Bankr.W.D.Tex.1988). Somewhat inconsistently, these courts also state that if the lienholders had come into court within the 60-day period for assumption or rejection of nonresidential real property leases, they could have avoided the dire consequence of "deemed rejection." Precisely how the lienholders, such as Eastover, could have protected themselves is not explained and is highly problematic. These opinions circularly conclude that the statutory breach plus surrender provided in § 365(d)(4) must cause a termination of the trustee's or debtor-in-possession's rights in the leasehold, because otherwise, "the face of the statute and its history are meaningless." *In re Giles Associates, Ltd.*, 92 B.R. at 698.

*In re Austin Dev. Co.*, 19 F.3d at 1081.

24

The Court then tackled the precise issue before this court: the meaning of the terms "rejection" and "termination" as used in § 365.  Noting that "the terms rejection, breach and termination are used differently, but not inconsistently or interchangeably," the Court discussed each in turn.  *Id*. at 1082.  "Throughout § 365, rejection refers to the debtor's decision *not to assume* a burdensome lease or executory contract."  *Id*. (emphasis in original).  Pursuant to §365(a), with some exceptions, rejection "constitutes a breach." Rejection, because it is treated as a breach, allows a creditor on that rejected lease or executory contract to file a claim for damages as of the date of the bankruptcy under § 502(g).  The decision to reject an unexpired lease or executory contract thus involves the "power to breach."  *Id*. at 1082.

Had Congress intended to equate rejection with termination, it knew how to do so.  *See In re Austin Dev. Co.*, 19 F.3d at 1082.  As the Court pointed out, Congress used "termination" in § 365(h), (i), and (n) as one option available to specified parties when a trustee rejects an executory contract.  *Id*. at 1082-83.

Unlike § 365(n), Congress did not use the word "termination" in § 365(d)(4).  "The cases that equate rejection with lease termination under 365(d)(4) ultimately rest on a manufactured definition of termination as 'breach plus surrender of premises.'. . . Section 365 offers no textual support for equating 'breach plus surrender' with 'termination;' to the contrary, it furnishes good reasons for deducing that Congress did not collapse breach or rejection into the termination of a lease or executory contract."

*Id*. at 1083; *see also In re Printronics, Inc.*, 189 B.R. 995 (Bankr. N.D. Fla. 1995) (following *In re Austin Dev. Co.*).

The Landlords primarily rely on *In re 6177 Realty Associates, Inc.*, 142 B.R. 1017 (Bankr. S.D. Fla. 1992), to support their contention that rejection of the Lease by Supermarkets terminated it.  The court in *6177 Realty* held that the rejection of the lease under 365(d)(4) resulted in its termination.  Decided prior to *Austin*, that case relied on the line of cases so logically discredited by the Fifth Circuit.  The case also is distinguishable from the present case because it was specifically decided under § 365(d)(4) instead of § 365(a).  The debtor in *6177 Realty* held the property under a *sublease*, rather than an *assignment* of the underlying lease.  Therefore, the debtor/sublessor that rejected the lease had a reversionary *possessory* interest in the property.  In the present case, Supermarkets retained *no* reversionary *possessory* interest in the property after it assigned the Lease to Quality.  For these reasons, *6177 Realty* is distinguishable from the present case.

The Circuit's subsequent decision in *Lil' Joe Records* also calls into question the holding of *6177 Realty*.  Although *Lil' Joe Records* did not involve a lease of nonresidential property under § 365(d)(4), its favorable citation of *Austin* suggests that in such cases the Eleventh Circuit would follow the rationale of *Austin*, rather than *6177 Realty*.  Therefore, *6177 Realty* neither applies to nor control the present case.

Under the better reasoned authority, Judge Cohen's Order did not "terminate" the assigned leasehold estate but placed it outside the administration of the

bankrupt estate, and Judge Robinson correctly held that Quality could assume the assigned leasehold in its bankruptcy case.

B.  Rejection does not Equal Recision

The Landlords equate Supermarkets' deemed rejection of its continuing liabilities under the Lease as a rejection, somehow equivalent to rescission, of the Assignment of the Lease to Quality, thereby extinguishing Quality's possessory rights.  In other words, the Landlords would have the rejection, which occurred by operation of law in 2009, revert back to some prior date to rescind the rights created by the Assignment to Quality in 2005.  This argument fails to recognize the import of Judge Cohen's prior ruling or controlling Eleventh Circuit law.

The Landlords specifically argue that the Assignment to Quality was rejected and terminated by operation of law because of the Supermarkets' trustee's failure to timely assume the Assignment in Supermarkets bankruptcy.  *See* Appellants' Br. (doc. 6) at 33.  Judge Cohen did not so hold in his Order in which he specifically refused to address Quality's rights under the Assignment.  Cohen Op. at 9.  Judge Robinson rejected that argument.  *See* Robinson Op. at 7.  This court, likewise, rejects that argument.

A somewhat analogous case reached the Bankruptcy Court for the Middle District of Alabama. In *Miller v. Hill, et al. (In re Zip Enterprises, Inc.)*, the Bankruptcy Court determined it lacked jurisdiction to address a dispute involving a lease.  28 B.R. 223 (Bankr. M.D. Ala. 1983).  Prior to its bankruptcy, Zip Enterprises entered into a lease with a landlord, then at different times, assigned the lease or subleased the property to

two different entities.  *Id*. at 223.  Although the lease had been property of the bankruptcy

estate, the trustee had not accepted or rejected the lease, so the lease was deemed rejected.

The court thus found that the lease "ceased to be an asset of this estate."  *Id*. at 225. The

controversy then became between the landlord and the assignee and the sublessee, but did

not involve the bankruptcy estate. So the bankruptcy court found that it lacked

jurisdiction over the dispute.  *Id*.; *see also Cahaba Forests, LLC v. Hay*, No. 3:11-cv-423-

WHA, 2012 WL 380126, at *8 (M.D. Ala. Fed. 6, 2012) (holding that the bankruptcy

estate no longer had any rights under the deemed-rejected lease, but that the remaining

rights under the sublease had to be determined under Alabama Law).

Similar reasoning applies to this case. Contrary to the Landlords' argument,

the rejection did not terminate Quality's interest in the leasehold but removed that issue

from the Supermarkets bankruptcy. The dispute then became between Quality and the

Landlords concerning the Assignment. That dispute then became ripe for determination,

as Judge Robinson did, in Quality's bankruptcy case.

The *Austin* case also addressed the question of the rights of third parties

when a lease is rejected.  As noted, the Court held that rejection under § 365(d)(4) "does

not effect a termination of that lease, or, consequently, an implied forfeiture of the rights

of third parties to the lease." 19 F.3d at 1083.  The Court then noted that the assignee of

the lease retained rights in it against the landlord and that the extent of those rights would

have to be adjudicated in state court because the bankruptcy estate no longer had an

interest in that outcome. *Id*.

28

The same was true here.  After Judge Cohen held that the Lease was deemed rejected, the rights of the leasehold as between the Landlords and Quality had to be resolved elsewhere. These decisions—holding that the disputes among third parties had to be decided in state court—contradict the Landlords' position that the ruling in the Supermarkets bankruptcy settled the matter by extinguishing Quality's rights.

These cases demonstrate that Judge Robinson correctly held that under § 365(a) "Supermarkets was able to purge itself of the lessee's *liabilities* under the Lease, but it no longer had any *rights* in the leasehold tenancy to reject—those rights were vested in Quality and beyond the reach of Code § 365(a) in the [Supermarkets' bankruptcy]." Robinson Op. at 10 (emphasis added).  The Lease and leasehold estate were transferred to Quality by the Assignment prior to Supermarkets' bankruptcy and prior to the rejection of the Lease.  The Lease and leasehold estate did not revert to Supermarkets or to the Landlords upon the rejection of the Lease.  Supermarkets' deemed rejection of the Lease, therefore, had no effect upon Quality's rights in the Assignment of the Lease or upon the leasehold estate. Those rights survived Supermarkets' bankruptcy and had to be determined elsewhere.

Based upon the holdings of *Lil' Joe Records*, *Garfinkle*, and *Austin*, the court concludes Supermarkets' rejection of the Lease under § 365(a) did not terminate or destroy Quality's interest in the leasehold estate.  All of the cases relied upon by the Landlords were decided under § 365(d)(4) and none involved a debtor who had assigned the lease prior to its rejection and no longer had a possessory interest.  Therefore, Judge

Robinson correctly concluded Supermarkets' rejection of the Lease did not terminate Quality's interest in the Lease and properly allowed Quality to assume it.

III.  Which Bankruptcy Estate Should Have the Assignment?

The Landlords' final argument is that the bankruptcy court erred in failing to grant their motion for relief from the automatic stay to allow Judge Cohen to consider whether his order "had the effect of terminating the Ground Lease and any subservient leasehold interests thereunder."  Appellants' Br. at 37.   They contend Judge Cohen was in a better position to determine what he meant in his Order.

"The decision whether to lift the stay lies in the sound discretion of the bankruptcy court."  *B.F. Goodrich Employees Fed. Credit Union v. Patterson (In re Patterson)*, 967 F.2d 505, 509 (11th Cir. 1992).  In deciding that issue, Judge Robinson found "fitting, if not mandatory" for him to address in Quality's bankruptcy case "what effect the Supermarkets' rejection of the Lease . . . had on Quality's lessee's interest in the Lease."  Robinson Op. at 5.  He found "it would be inappropriate for this Court to burden another court, including another bankruptcy court, with core matters arising in a case pending before this Court."  *Id*. at 6.  Judge Robinson observed that "Judge Cohen specifically refrained from ruling on what consequences, if any, the rejection of the Lease by Supermarkets might have had on Quality's interest in the Lease."  *Id*.  For these reasons, Judge Robinson concluded "it would be ill-advised to now grant the Stay Relief Motion and thereby surreptitiously impose upon Judge Cohen the chore of adjudicating an issue that he properly avoided, the resolution of which would have little or no impact in

the [Supermarkets bankeruptcy], but will likely have a significant impact on Quality's ability to successfully [reorganize] in its chapter 11 case." *Id*. at 7.

As discussed above, other courts in similar circumstances have held that the rights of third parties to reject executory leases should not be determined in the bankruptcy case. *See In re Austin Dev. Co.*, 19 F.3d 1077 (5th Cir. 1994); *Cahaba Forests, LLC v. Hay*, No. 3:11-cv-423-WHA, 2012 WL 380126, at *8 (M.D. Ala. Fed. 6, 2012); *In re Zip Enters., Inc.*, 28 B.R. 223 (Bankr. M.D. Ala. 1983). Thus, Judge Cohen correctly refrained from addressing the question of Quality's interest, which at the time of this ruling was the subject of state court litigation because the rights and interests of Quality and the Landlords under the Assignment were not part of Supermarkets' bankruptcy. Judge Robinson properly determined those rights should be addressed in Quality's bankruptcy where their true impact would be felt.

Judge Robinson determined the Quality bankruptcy case was the proper forum for determining Quality's interest in the Lease and leasehold estate. The reasons Judge Robinson gave for his decision show that he carefully considered the matter and determined that the Quality bankruptcy case was the proper forum for determining the legal impact of Supermarkets' rejection of the Lease on Quality's interests.

For these reasons, the court finds no abuse of discretion in Judge Robinson's refusal to lift the automatic stay.

<u>CONCLUSION</u>

Supermarkets' rejection of the Lease under § 365 did not terminate the Lease, or revoke or rescind the Assignment of it to Quality.  Because the Lease was not terminated, Quality retained its assigned rights to the Lease. But the extent of those rights had to be determined outside of the Supermarkets bankruptcy. When Quality filed its own bankruptcy, the assigned Lease then became an "unexpired lease of the debtor" Quality, and its trustee had the right, with approval of the bankruptcy court, to assume or reject that lease under § 365(a).

Judge Robinson carefully considered whether the automatic stay should have been lifted.  He gave sound reasons for his refusal to lift the stay, and did not abuse his discretion in denying the Landlords' motion.

The bankruptcy court's findings of fact are not clearly erroneous, and it correctly applied the law to those facts.  Its refusal to lift the automatic stay was not an abuse of its discretion.  Therefore, after careful consideration, this court AFFIRMS the decision  of the bankruptcy court in its entirety.

DONE and ORDERED this 13th day of September, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE